# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 14, 2013

Lyle W. Cayce
Clerk

No. 12-40946
Summary Calendar

MOODY NATIONAL BANK, N.A.,

Plaintiff - Appellee

v.

BYWATER MARINE, L.L.C.; BYWATER MADISON, L.L.C.; BYWATER
LUDLOW, L.L.C.; UNIMAK MARITIME GROUP, L.L.C.; WILLIAM J.
TURNER, In Personam,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No: 3:10-CV-589

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

In this maritime-breach-of-contract matter, several entities that defaulted on a promissory note secured by two ship mortgages, along with the guarantors of that note, appeal the district court's grant of summary judgment to their note-holder and creditor, Moody National Bank, N.A. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40946

## FACTS AND PROCEEDINGS

Bywater Marine, LLC, Bywater Madison, LLC, and Bywater Ludlow, LLC (collectively, "Bywater") borrowed $2.12 million from Moody National Bank ("Moody") to buy two offshore supply vessels, the *M/V Bywater Ludlow* and the *M/V Bywater Madison*. Their loan agreement took the form of a promissory note executed by Bywater in favor of Moody, mortgages on the two ships securing the promissory note, and personal guarantees of the promissory note executed by Unimak Maritime Group, LLC and Bywater's principal officer William "Bill" Turner. The parties executed the agreement on November 7, 2008.

Exactly one year later, after Bywater had difficulty making its scheduled payments on the promissory note, the parties executed an amendment to the note that significantly reduced Bywater's monthly payments to Moody. The amended loan agreement also stated that: "No variation, modification or alteration of the terms hereof shall be binding upon any party hereto unless set forth in an express formal amendment document executed by all parties hereto."

Less than a year after this amendment, Bywater defaulted on the promissory note, and Moody accelerated the maturity of the indebtedness. Moody filed suit in the district court on December 20, 2010, naming as defendants Bywater and the two guarantors (collectively, the "defendants"), as well as the two ships *in rem*. One of the Bywater entities, Bywater Ludlow, filed motions to dismiss for insufficient process or service of process pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). The district court abated these motions pending settlement efforts.

As part of the settlement negotiations that ensued, Bywater and Moody agreed to sell the *Ludlow* for $1 million, the net proceeds of which would be applied against Bywater's outstanding debt. During the negotiations over this sale, Bywater and Moody also entered into negotiations over the deficiency that

would remain due under the promissory note after the sale of the *Ludlow*. Bill Turner, in an email regarding the proposed sale of the *Ludlow*, asked whether Moody might be willing to forgive part of the deficiency that would remain after the sale. In response, Moody wrote that it might "be willing to consider forgiving half of [the remaining deficiency] and originating a new note." Turner replied, requesting that Moody agree to cap any deficiency after the sale of the *Ludlow* at $100,000 and asking that the new note have a term of 10-12 months. Moody rejected the deficiency cap, but accepted the suggested term length for the proposed new note. Moody emailed a summary of the agreed-upon terms to Bywater and mailed new loan documents to Bywater memorializing the new terms, but received no response to its email. Bywater never returned or took any action with respect to the new loan documents.

Litigation in the district court resumed. Defendants Bywater Marine, Bywater Madison, Unimak Maritime Group, and Bill Turner filed their answer to Moody's complaint, in which they asserted a large number of affirmative defenses, including motions to dismiss for insufficient process or service of process. The district court denied Bywater Ludlow's motions to dismiss for insufficient process or service of process that it had abated pending the parties' negotiations, but issued no ruling on the remaining defendants' affirmative defenses on the same grounds.

Moody moved for summary judgment in the amount of the full deficiency of the promissory note remaining after the sale of the *Ludlow*, $1,362,109, plus accrued interest. The defendants argued in opposition that the negotiations had constituted an enforceable loan modification reducing the principal owed; nevertheless, the district court granted Moody summary judgment. The defendants filed a motion to alter or amend the judgment, which the district court denied. The defendants now appeal, challenging the district court's grant of summary judgment.

No. 12-40946

## DISCUSSION

The defendants raise three arguments on appeal. First, they contend that process and service of process were insufficient, leaving the district court without jurisdiction to decide this matter. Second, they argue that summary judgment was inappropriate because of a genuine issue of material fact as to the quantum of Moody's damages in light of the purported loan modification resulting from the settlement negotiations. Finally, they assert that a number of affirmative defenses, including the fact that Moody failed to mitigate its damages, preclude summary judgment.

### A. Process

"The district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process." *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986) (per curiam). While the district court denied Bywater Ludlow's Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5) motions to dismiss for lack of process and service of process, it never ruled on the remaining defendants' motions to dismiss on the same grounds, which they asserted as affirmative defenses in their answer. When a district court fails to deny a motion to dismiss expressly but nevertheless enters summary judgment on all pending claims, as is the case here, we deem the district court's action an implicit denial of the motion to dismiss. *See Unida v. Levi Strauss & Co.*, 986 F.2d 970, 974 (5th Cir. 1993).

Moody served all of the defendants by serving the Texas Secretary of State, pursuant to sections 17.044(a) and 17.045 of the Texas Civil Practice & Remedies Code. *See* FED. R. CIV. P. 4(e), (h) (allowing service of individuals and corporations in a given state by following that state's procedure for service). Service by this method requires a plaintiff to show that the defendant person or entity is a nonresident and to provide the defendant's home or home office

4

address, in order to allow the Secretary of State to mail effective notice of service to the defendant. TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.044(a), 17.045(a).

The defendants allege that the addresses Moody provided to the Secretary of State to notify Bywater Ludlow, Bywater Marine, Bywater Madison, and Unimak Maritime Group were not in fact their homes or home offices, but merely "mailing addresses," thereby invalidating Moody's attempt to serve them. In the original loan agreement, the defendants stipulated as to the validity of these addresses for the purpose of accepting process. In light of that stipulation, we decline to hold that the district court abused its "broad discretion" in determining that those addresses were valid home addresses for the purposes of service. *See Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 771 (Tex. App. — Fort Worth [2d Dist.] 1990) ("We hold that where only one address is given in a contract as the business address it is the 'home office' of the party using such address.").

### B. Loan modification

"We review a grant of summary judgment *de novo*, applying the same standards as the district court." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The defendants contend that summary judgment for the full amount of the deficiency was improper because their communications with Moody during the settlement negotiations had resulted in a modification of the loan agreement, reducing the deficiency. The defendants point in particular to two emails from Moody, one stating that Moody "*may*" be willing to "*consider*" reducing by half the deficiency remaining on the promissory note after the sale of the *Ludlow,* and a second rejecting the deficiency cap proposed by Turner but accepting his proposed term for repayment for the new renegotiated note. The defendants

argue that this series of emails demonstrates that the parties had agreed to a modification of the loan agreement and that they had thereby reduced the amount that the defendants owed under the agreement.

The 2009 amendment to the original loan agreement specifically provided that all further modifications to the loan agreement had to be in the form of "an express formal amendment document executed by all parties hereto." No such formal amendment was executed as a result of these workout negotiations. Thus, we hold that the loan agreement as initially amended in 2009 remained in force, that Moody was entitled to recover the full deficiency, and that summary judgment was proper.

*C. Other affirmative defenses*

The defendants also summarily advance a large number of affirmative defenses to summary judgment, namely (1) repudiation, (2) failure of consideration, (3) waiver, (4) estoppel, (5) novation, (6) ratification, (7) modification, and (8) mitigation. All of these fall with their primary argument about the purported loan modification.

First, if the defendants and Moody never executed a new loan modification, and we hold that they did not, then Moody's actions in not abiding by the purported terms of the modification cannot constitute a repudiation of a contract. Second, Moody cannot be said to have failed to provide consideration owed under the loan modification if the loan modification never came into effect. Third, Moody cannot be said to have waived its rights to collect under the loan agreement if it never agreed to a modification of its rights under that agreement. Fourth, because the parties never modified the loan agreement, there was no promise on which the defendants could have reasonably relied, and as a result Moody cannot be estopped from collecting the debt owed to it. Fifth, the purported loan modification did not replace the loan agreement, so no novation occurred. Sixth, the defendants advance no argument in their brief as to how

6

ratification is implicated, and as a result we deem it not properly preserved on appeal. Seventh, the defendants cannot avail themselves of a modification defense because the loan agreement was never validly modified.

Finally, the defendants contend that Moody failed to mitigate its damages, because, under the purported loan modification, the defendants would have been able to sell the *M/V Bywater Madison* to reduce the remaining deficiency, but that Moody withheld its consent for the sale. This argument fails because Moody had the right to refuse to consent to a sale of either ship under the loan agreement, the loan modification never entered into effect, and the duty to mitigate does not require relinquishment of valid, bargained-for rights. *See Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 858 (Tex. 1999).

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.